VIRGIL C. WILSON *vs*. CITY OF SOUTH PORTLAND.

Cumberland.    Opinion November 24, 1909.

*Eminent Domain.    Land Taken for Public Park.* ⁊ *Damages.    Title.    Statute, 1821,*
*chapter 118, section 2.    Statute, 1883, chapter 175, sections 3, 4.    Revised*
*Statutes, 1841, chapter 25, section 8 ; 1857, chapter 18, section 8 ; 1871,*
*chapter 18, section 8 ; 1903, chapter 4, section 91 ; chapter 18,*
*section 8 ; chapter 23, sections 8, 20.*

Revised Statutes, chapter 4, section 91, relating to the taking of land for
parks, provides as follows : " Any person aggrieved by the estimate of
damages may have them determined by written complaint to the supreme
judicial court in the manner provided respecting damages for the estab-
lishment of town ways." In proceedings under this section instituted by
a person aggrieved by the estimate of damages, *Held :* That the question
of the title of the complainant to the land taken may be considered in so
far as it respects the question of damages.

On motion and exceptions by defendant.    Motion not considered.
Exceptions sustained.

Complaint for increase of damages brought under the provisions
of Revised Statutes, chapter 4, section 91, relating to the taking of
land for public parks, and filed in the Supreme Judicial Court,
Cumberland County. The defendant city filed an answer denying
"that the land and flats so taken for said public park embrace and
include any part of the land belonging to said complainant described
in his bill of complaint and requires complainant to prove title to
the same." The municipal officers of the defendant city did not
allow the plaintiff any damages for the land taken but their return
gave his name as an owner.

The case was tried to a jury and the verdict was for the plaintiff
for $1610.83. The defendant city then filed a general motion for
a new trial and also excepted to several rulings made during the
trial.

The case is stated in the opinion.

*Charles A. Strout, and Virgil C. Wilson,* for plaintiff.
*Dennis A. Meaher, and Lauren M. Sanborn,* for defendant.

SITTING:  EMERY, C. J., WHITEHOUSE, CORNISH, KING, BIRD, JJ.

BIRD, J.  This is a complaint for increase of damages brought under the provisions of section ninety-one of chapter four of the Revised Statutes relating to the taking of land for parks.  The cause is before this court upon exceptions and motion for new trial. At the trial before the jury the defendant offered evidence attacking the title of petitioner to the land, for the taking of which he claimed damages.  The court excluded the evidence offered upon the ground that the return of the municipal officers, while allowing him no damages, gave the name of petitioner as an owner and defendant had exceptions.

It is provided by R. S., c. 4, § 91, that *any* person aggrieved by the estimate of damages may have them determined by written complaint to the Supreme Judicial Court in the manner provided respecting damages for town ways, which by virtue of § 20 of chapter 23, R. S., is that provided in the case of laying out of highways in R. S., c. 23, § 8.  This section is based on §§ 3 and 4, c. 175, Public Laws of 1883 which took from the county commissioners the jurisdiction or control of cases of appeal, which they and the court of sessions had had from the establishment of the State and transferred it to the Supreme Judicial Court: *Kennebec Wat. District* v. *Waterville*, 96 Maine, 234, 249.  With respect to the former manner of proceeding, it was provided by C. CXVIII, § 2 of the Pub. Laws of 1821, that "If the right or interest of *any* complainant in, or to the real estate alleged to be damaged by the laying out of such highway shall be denied by the town or corporation complained against, the Jury summoned, or committee agreed on as aforesaid, shall have authority to consider such question of right or interest so far only as respects the damages of said complainant."  The provision is found in substantially the same words in the revision of 1841: R. S., 1841, c. 25, § 8.  In the revision of 1857 it became, "The committee or jury may decide upon the title of any petitioner, so far as it respects damages:" R. S., 1857, c. 18, § 8, and so continued until 1883: R. S., 1871, c. 18, § 8.

In *Minot* v. *Commrs.*, 28 Maine, 121, 125 (1838) upon petition

for certiorari, it is held that "The interest of the petitioner claiming damages, in this land, is one of the questions to be submitted to the jury.    It is the foundation of his claim for damages.  .  .  .  . It is too plain to need an argument, that one cannot be damnified by the location of a road, over land, in which he has no interest, and if Dwinal [the petitioner] had no such interest in the land, as to entitle him to damages, the proceedings, relating to damages, ought to be quashed." And in *Carpenter* v. *Commrs.*, 21 Pick. 258, 260 (1838) a case involving damages by reason of the location of a railroad, the court said, referring to the statute providing that the damages shall be estimated by the commissioners in the manner provided in the case of laying out highways, "This, by necessary implication, gives to the commissioners authority to inquire whether any damages have been sustained by the applicant, and conse-quently whether he owned the property, for an injury to which damages were claimed." And again "The estimate, from which the party *is entitled* to appeal, may be fairly construed to import, not only a *valuation of damages*, but also a judgment on the party's *claim for damages* : Id. page 260. At the time of this decision the provisions of the statutes of Massachusetts and of Maine as to appeals in proceedings for laying out highways was and long had been substantially the same.

*Thurston* v. *Portland*, 63 Maine, 149, (1873) was an appeal from the decision of the city council of defendant, in proceedings under its charter, denying damages to land of appellant in laying out a street.    The court, in its opinion says, "It will be noticed that the charter does not expressly authorize 'the committee to decide upon the title of the appellant, so far as it respects damages,' as do the R. S., c. 18, § 8, in the cases of highways and town ways in towns.    But we do not perceive any good reason why the com-mittee may not consider that question, so far as it respects damages without any express authority in the charter.    Such a power has been in the general statute ever since the organization of the State. It is the foundation of the claim.    'It is too plain to need argu-ment, that one cannot be damnified by the location of a road over land in which he has no interest.'" Id. page 150.

The words "any party" and "any petitioner" as used in the statutes are sufficiently comprehensive to include "owners" named in the return or report as well as those not named.

It is apparent from the authorities cited, we believe, that in confiding appellate proceedings as to damages to the committee or sheriff's jury under the earlier statutes, the question of title was deemed a necessary incident to the determination of damages and that the provisions of § 2 of C.CXVIII of the Public Laws of 1821 permitting the committee or jury to consider title "so far *only* as respects the damages" was not so much a conferring, as a limitation, of such authority.

Such being the case, the omission of a similar provision from R. S., c. 23, § 8, does not indicate that the question of title is not to be submitted to the jury when controverted but that the legislature believed, when the jurisdiction was taken from an inferior into a superior court, that such limitation was unnecessary. Nor is it readily conceivable that the legislature in transferring jurisdiction from the inferior tribunal to the Supreme Judicial Court would at the same time refuse to confide to the latter a jurisdiction as broad as that enjoyed by the former for nearly a century.

Under this construction of the statute, we are unable to perceive how petitioner can invoke the doctrine of estoppel.

*Exceptions sustained.*